Ladies and gentlemen, our first case is In Re. Wilson, the appeal of Mohns. Mr. Matulak. John Matulak May it please the Court, my name is John Matulak and I represent Mohns, Inc., a creditor in this bankruptcy appeal. In the lower bankruptcy court was Judge Susan Kelly. This matter was appealed to Judge Lynn Edelman and now it is before you here today. In the underlying bankruptcy proceeding, the creditor Mohns, Inc. built the house for the debtor. It was when the debtor filed bankruptcy with about roughly a million and a half of assets after a trial that determined Mohns was entitled to his money, he declared most of his assets exempt. Mainly as the bankruptcy court even acknowledged the efforts of Mohns, the estate was able to collect $85,000 at the end of the day. And just as the bankruptcy action was about to wrap up, the trustee put in an amount of compensation for roughly $28,000 or roughly a third of the amount collected. Mohns objected to that application for fees and the objection was denied. The fees were approved by the bankruptcy court and then it was appealed and Judge Lynn Edelman issued a decision sustaining the bankruptcy court. And the basic reason that the objection was not sustained is that both the bankruptcy court and the district court determined that the court has no discretion over what amount of fees should be awarded to the bankruptcy trustee. I think actually the decision was that the court has limited discretion, not no discretion. That is true, Your Honor, but the way it worked out in this case is in the bankruptcy court it was extraordinary circumstances where the reason for where the court could depart from the rule that the trustee gets the percentage fees assigned in the statute, but when it went up to the district court, the district court I think went beyond that in saying there's really, the district court said there may be unusual circumstances where the trustee would not get paid his compensation, but you really didn't identify, the district court really didn't identify any of those circumstances. So now you think the $28,000 was excessive? That's correct. What do you think it should be? I think it should be in the neighborhood of $8,000. $8,000? Yes. And you arrive at that how? If you look at the, I mean I think most of the $28,000 is an absolute windfall to the trustee because it's based on a calculation that includes payment of the secured credit, payment of two secured creditors on the sale of a home. The home that my client fought hard for to get the objections, the exemptions denied, and to get it postured where it could be sold for the bankruptcy estate, the house sold for $450,000, it netted the estate. Well are you suggesting $20,000 of the fee is related to the amount of the the amount of the loan that is secured? The exact figure? I mean that is actually as to which there was simply an exchange of money for the security. The exact figure is $18,549.83, that's what I calculated because that is based on 5% of the secured debt, which was $370,996.54. That would be exact. And that's the part of the debt for which the security is adequate? Is that the point? That was, what happened was when the house was sold, there was a first and second mortgage against the house. When it closed, the title company had to pay off those two mortgages before turning over to the bankruptcy trustee and a net check in the amount of approximately $51,000 from the sale. And yes, that amount was then, but the trustee in his calculation of his fee added, and under the statute I conceded, under the statute it says you can include payment of secured creditors or a collection of proceeds, but that amount was included in his fee calculation. So your argument is this statutory reference to including holders of secured claims, that's a reference to the part of the secured claim for which the security is inadequate? No, I don't think the security was inadequate in this case. Excuse me? I don't think that the secured creditors were perfectly secured by the house. There's enough of a surplus in the sale of the house to turn money back to the bankruptcy estate. Well, you're not following me. You can have a secured claim which is secure in the sense that the value of the security is at least as great as the debt, right? Correct. And I thought your argument was that for that part of the debt, the part that it's securely secured, the trustee doesn't do anything. The trustee doesn't... Well, I think the conclusion there is correct. The trustee didn't really do anything to pay that credit. I mean, it was all done by the title company, if you come down to the... That's what I thought you were saying, that if the security is adequate, then the debt is offset by the security and the trustee doesn't have to do anything. Correct. So that's your basic argument. Well, it's not the overall argument. It's not the legal argument I'm trying to make with respect to how the court has discretion over the trustee's fee. What I think is this, is that if you're going to... of some upper threshold that's set forth in the statute, that the court has discretion to reduce. And here the court, like in Phillips, like in Ludke, a central Illinois bankruptcy case, they say if this comes to the trustee as kind of not too many efforts, the court can look at the upper threshold, but it should have the discretion to reduce fees. Not for any extraordinary circumstances, not for anything unusual. I see my time's up, so... Okay, well, thank you. Thank you, Mr. Mackluck. Is that it? Mackluck, thank you. Mackluck, okay. Mr. Levenstam? May it please the court, Barry Levenstam, on behalf of Mr. Lancer, the trustee. Let me just start out by pointing out Section 326A specifies that the percentage schedule it sets forth is to be applied upon all monies dispersed or turned over in the case by the trustee to the parties in interest, excluding the debtor, but including holders of secured claims. And if you look to what was won... Yeah, but to the extent the security is adequate, the trustee doesn't do anything. Absolutely, the trustee does. What? I mean, the trustee listed three pages of what he did. But secured claims, it's not involved in bankruptcy, right? But he had to manage the whole estate. He had to ultimately, he was set down in the middle of this highly litigious... Well, he had to supervise the sale of the house to get the money in to pay off the secured claims, and Congress doesn't say here anything about not paying when the secured claims are really secured. I mean, there's no distinction for that. The point is that these percentages are specifically on all monies dispersed. Ironically, my client fought very hard to get a compromise under which the debtor would keep the house, and his fee would not include any of the money realized on the sale of the house. But Mr. Moans decided it was more important to litigate to push this to sale, and so that incurred an awful lot of work for my client, litigating and then administering the sale, and there's nothing that suggests... He does, right? No, I don't think it does. Right. Then why should his compensation vary with the size of the secured claims? I'm saying it should be a percentage applied to all monies dispersed. Why? I don't understand that. Because that's what the statute says. That's what Congress says. We don't know what the statute says, including holders of secured claims. That's not saying... Is your argument wholly a reliance on the last five words of 326A? No, Your Honor. That clearly... Well, you say that's what the statute says, and I assumed that you were referring to that phrase. Well... And then the question, at least as I understood Judge Posner's question, comes back to earlier in 326A, which says reasonable compensation for the trustee's services. So if a trustee provides no services with respect to secured claims, is there any compensation due? I believe that the approach that Congress took and that the bankruptcy court took here is to look at the... If you could answer my question rather than go off on a tangent. I'm sorry. I appreciate it. This applies to the ensemble of services, the entirety of what he did. But I'm asking a concrete question whether, if an asset passes through the bankrupt estate and goes to a secured creditor, whether the trustee has performed services. Now, you may say that's not what happened here, but I'm interested in an abstract answer to an abstract legal question. What do you think about that? Yes, absolutely. The trustee performed services. And what services are performed if an asset passes through the estate without action and then goes to a secured creditor? The asset passed through the estate by dint of the trustee's work on the estate, administering the estate, organizing the estate, litigating the issues... Passes through the estate by operation of law. The trustee could butt his head against a wall, and the same thing would happen on a fully secured claim. The trustee can't stop it. It just happens. Well, it happens only after the court resolves that this is not to be abandoned, but is to be sold. And then only after he retains the real estate agent. You're now coming back to this case where the asset was sold. The question I'm asking, and I thought initially to Posner's question, was what happens if it passes through? We get that down, then we can ask what happens if it's sold. Okay. I believe if it passes through, the statute contemplates it being included in the calculus. There's nothing that says it isn't, and it does... Why if the bankruptcy trustee doesn't do anything with regard to the secured... Or put differently, if the secured claim were $200,000 instead of $100,000, would the bankruptcy trustee be entitled to a higher commission? The bankruptcy judge would be entitled under the statute to the percentage, however the total estate laid out according to that schedule. But you can see how you are divorcing his compensation from his services. When you talk about, when one talks about a commission as opposed to a salary or something, a commission is payment for a specific service, like selling a house or what have you. And if there's no, if the size of the secured, as long as the claim is securely secured, how does the size affect the work he does? Well, now I'm getting a little bit of pillar to post here. What happened is that to recognize this, he had to realize this and have it pass through, he had to render all these services over three years. But how are his services affected by the size of the claim? I mean it's one thing when the, with regard to the unsecured claims, and the bankruptcy judge has to allocate that among the creditors, and the larger the amount of money to be allocated, the more work he has to do. So a percentage commission recognized the fact he's doing more work. Not clear that he does any more work with regard to secured claims depending on the size of the secured claim. But that's not a very, I mean, what happened in the case is that he had to work a great deal, and the bankruptcy judge... Does the amount of his work depend on the size of the secured claim? That's the issue. Whether he can get a percentage of those secured claims regardless of whether the size of the claim affected the amount of his work. My answer is that the statute contemplates... That is not an answer to my question. Well, the bankruptcy judge exercised their discretion... As Judge Easterbrook said, the last five... Yes, I believe those last five words bring that within the court's discretion in terms of what to award. The court, looking at the ensemble of services that were provided... Exactly, services. So what's the evidence that the size of the claim affected the amount of service that the bankruptcy judge provided? Your Honor, the house was the bone of contention. I know, but that's true whether the secured claim is $100,000 or $200,000. Well, it seems to me that there is nothing in the statute that says that you take this out. It's within the bankruptcy judge's discretion, and I think this court regularly defers on fee determination. The bankruptcy judge oversaw this very difficult litigation, and the bankruptcy judge said in ruling that if the statute had allowed exceptional circumstances to vary up, she would have awarded him more because of the difficulties of administering this estate. Setting aside the specifics of this case, I'm just interested in the interpretation of the statute. Yes. And 326A applies the percentage commission against all monies or to all monies dispersed or turned over in the case by the trustee to parties in interest, excluding the debtor but including holders of secured claims. So it doesn't appear to parse the total service by service to determine whether the trustee actually did anything with respect to particular items of property that passed through, came into the estate. It looks to the total that the trustee collected and dispersed or turned over in the case. The point I'm trying to make is when I say the ensemble of services, Mr. Lancer is very clear below. This is not a commission on the sale of the house. This is the commission on the overall administration of the estate. Right, because these trustees essentially serve as officers of the court. Yes, and this was a very litigious matter. And they're not publicly compensated. That's true, absolutely. And the bankruptcy judge felt after administering this and the whole fight about the house that he had earned the standard fee set forth by Congress. Right, and the statutory scheme used to provide for essentially the lodestar method of compensating the trustee as in attorneys fees shifting statutes. And Congress changed that by adopting this commission-based system, which applies these flat percentages to whatever amount the trustee ultimately disperses to parties in interest, including secured creditors. Absolutely. So to the extent there's a windfall, that's just a consequence of the commission. Yes, although I would say this in asking. Maybe not in this case, but right. To the extent that there is one. There was no windfall here. This was three years of very hard work. Thank you. Mr. Macklin, how much time does he have? To reconcile the argument, it really goes back to the first point we were trying to make in our brief. The issue is whether or not the bankruptcy court has discretion. And the way to reconcile some of the concerns of the court is when you look at 326, it's an upper limit. It's not a guaranteed amount for the trustee. And just to analogize one other case, in Ludke, which was a Chapter 11 case that was converted to a Chapter 7, a million bucks just dropped into the lap of a trustee. Are you contending that the trustee failed to maximize the proceeds from the sale of the house? It's not in the, I think we could have done better. I'm just asking whether you're contending something. I don't, that is not part of this appeal or anything. All right, I take it then that the answer is no. Right, not in this appeal. But I am contending that if the court were properly exercising discretion here, or given an opportunity for an evidentiary hearing, given an opportunity for Bones to present his case, it would have never, there's no basis for giving the trustee the maximum commission allowable under 326. There's just too many other... You want to have an evidentiary hearing over, what, $20,000? I did ask for one, Your Honor. I was denied it. I mean, we had the, you know, I was... Don't legal fees eat up $20,000 pretty quickly? Well, we had evidentiary hearings in the bankruptcy court below. And I think I even cataloged, you know, some of them in the briefs. They cost like $5,000 to $10,000. But I mean, this is an issue I very strongly felt about. I mean, you had a bankruptcy proceeding where, through the entire proceeding, it seems like we were fighting the trustee to go collect assets. This is a house that he said was worth zero, and it was ready to throw back to the debtors before we intervened and objected. Unless we did that much, we didn't have anything to argue about. Once we, you know, he appealed... Once we were successful in establishing there were no exemptions on the house, he tried to settle with the debtors behind our backs for $10,000. I mean, this is... We had to appeal that to get where we are today. Okay. Thank you, Mr. Miller. Thank you. Thank you to both counsel.